COMMONWEALTH INSURANCE COMPANY OF NEW YORK, a corporation, The Continental Insurance Company, a corporation, Milwaukee Insurance Company of Milwaukee, Wisconsin, a corporation, United States Fire Insurance Company, a corporation, Plaintiffs,

v.

O. HENRY TENT & AWNING COMPANY, a corporation, Defendant.
No. 57 C 362.

United States District Court
N. D. Illinois, E. D.
May 27, 1960.

Donald N. Clausen, Herbert W. Hirsh, John P. Gorman, Jerome H. Torshen, of Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for plaintiffs.

Morris A. Haft and Bernard Davis, of Haft, Shapiro & Davis, Chicago, Ill., for defendant.

PERRY, District Judge.

In this proceeding for a declaratory judgment, plaintiff insurance companies ask for a determination as to the extent of their liability to defendant on a fire loss under certain policies of insurance. Plaintiffs contended that defendant had not complied with the provisions of a "Value Reporting Clause" contained in each of the policies, and that their liability should not exceed the sum of $14,360.76. Defendant, however, counterclaimed for a larger sum.

Having heard and considered the evidence herein, the court finds the facts and states the conclusions of law as follows:

### Findings of Fact

1. This is a proceeding for a declaratory judgment brought by plaintiff insurance companies, praying that this Court adjudge and decree that:

A. That the liability of The Commonwealth Insurance Company of New York under its policy of insurance No. 720562 to the defendant, O. Henry Tent & Awning Company, is limited to and cannot exceed the sum of $2,154.11, that is 15% of the sum of $14,360.76;

B. That the liability of The Continental Insurance Company under its

policy of insurance No. 42328 to the defendant, O. Henry Tent & Awning Company, is limited to and cannot exceed the sum of $2,154.11, that is 15% of the sum of $14,360.76;

C. That the liability of the Milwaukee Insurance Company of Milwaukee, Wisconsin under its policy of insurance No. 98633 to the defendant, O. Henry Tent & Awning Company, is limited to and cannot exceed the sum of $5,026.27, that is 35% of the sum of $14,360.76;

D. That the liability of the United States Fire Insurance Company under its policy of insurance No. 793365 to the defendant, O. Henry Tent & Awning Company, is limited to and cannot exceed the sum of $5,026.27, that is 35% of the sum of $14,360.76, and for such other and further relief as the Court may deem proper, and that plaintiffs may recover their costs.

2. That defendant, O. Henry Tent & Awning Company, a corporation of Illinois, has filed its counter-claim herein against the plaintiffs, praying judgment against the several plaintiffs in the amounts as follows:

| | | | |
|---|---|---|---|
| A. | The Commonwealth Insurance Company | – | $ 4,828.24; |
| B. | The Continental Insurance Company | – | 4,828.24; |
| C. | Milwaukee Insurance Company | – | 11,265.90; |
| D. | United States Fire Insurance Company | – | 11,265.91; |
| | Total | – | $32,188.29, |

and in addition thereto, interest on such sums of money for plaintiffs' vexatious failure and refusal to pay defendant's loss without reasonable cause, and costs and reasonable attorney's fees as provided by statute.

3. Each of the plaintiffs is, and has been continuously since prior to the date of filing of this suit, a citizen of and incorporated in the State hereinafter set out after the name of each corporation, namely:

| Plaintiff | Citizen of and State of Incorporation |
|---|---|
| The Commonwealth Insurance Company of New York | New York |
| The Continental Insurance Company | New York |
| Milwaukee Insurance Company of Milwaukee, Wisconsin | Wisconsin |
| United States Fire Insurance Company | New York |

4. O. Henry Tent & Awning Company, a corporation, the defendant, is and has been continuously since prior to the date of filing of this suit, an Illinois corporation and citizen of Illinois.

5. The amount in controversy between each of the plaintiffs and the defendant herein is in excess of the sum of $3,000, exclusive of costs and interest.

6. From 1940 to the present date, defendant has been insured under policies of insurance containing a "Value Reporting Clause". From 1940 through 1949 plaintiff, The Continental Insurance Company, carried defendant's entire risk at various locations under the foregoing type of fire insurance coverage; from 1949 through 1953 The Continental Insurance Company carried 50% of the risk; Milwaukee Insurance Company of Milwaukee, Wisconsin (formerly Milwaukee Mechanics Insurance Company), carried 25% of the risk; and plaintiff United States Fire Insurance Company

carried 25% of the risk. From 1953 through March 31, 1956 plaintiffs were the sole carriers on this particular type of fire insurance policy, the Value Reporting Policies, affording coverage to defendant at various locations.

7. On March 31, 1955, each of the plaintiffs issued to the defendant Illinois Standard Policy of Fire Insurance with Form No. 111 Ed. (June, 1953), "Multiple Location Reporting Form A, Monthly Average, With Premium Adjustment" attached thereto for a period of one year covering stock, materials and supplies owned by the defendant while located at 3222–24 North Halsted Street, Chicago, Illinois, with a total limit of liability in the sum of $50,000 as follows:

| Policy No. | Company | % of Limit of Liability |
|---|---|---|
| 720562 | Commonwealth Insurance Company | 15% |
| 42328 | Continental Insurance Company | 15% |
| 98633 | Milwaukee Insurance Company | 35% |
| 793365 | United States Fire Insurance Company | 35% |

8. That the policies of insurance involved herein and in effect on March 28, 1956 (the date on which defendant and counter-plaintiff suffered its fire loss), insured the following locations, the limits of liability under such policies being to wit:

| | |
|---|---|
| Nos. 4862–4864 North Clark Street | $120,000.00 |
| Nos. 4852–4856 North Clark Street | 20,000.00 |
| Nos. 3222–3226 North Halsted Street | 50,000.00 |
| Chicago, Illinois – Total Insurance | $190,000.00. |

9. Each policy of insurance issued to defendant contained the following provision:

"Value Reporting Clause—It is a condition of this policy that the Insured shall report in writing to this Company not later than thirty (30) days after the last day of each calendar month, the exact location of all property covered hereunder, the total actual cash value of such property at each location and all specific insurance in force at each of such locations on the last day of each calendar month. At the time of any loss, if the Insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values less the amount of specific insurance reported, if any, filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, this policy shall cover only at the respective locations specifically named herein and for not exceeding 75% of the applicable limit of liability of this Company specified in the Limit of Liabilities Clause."

The policies of insurance issued by the plaintiff companies for the policy period, insuring the defendant against the perils therein set forth, also contained a "Full Reporting Clause", or sometimes known as the "Honesty Clause". This cause is not concerned with such provision of the policy, in that the plaintiffs for their cause of action rely solely upon the defendant's alleged failure to comply with the "Value Reporting Clause".

10. From and prior to 1940, Albert Swanson & Son was the sole insurance broker for the O. Henry Tent & Awning

Company; prior to and including 1949 through 1956, Albert Swanson & Son was local general agent for Milwaukee Insurance Company of Milwaukee, Wisconsin and United States Fire Insurance Company; that all policies of insurance purchased by and issued to defendant by such named companies were signed by Albert Swanson & Son as the agent for said companies.

11. All "Value Reports" required to be submitted by defendant to the plaintiff companies were signed by Albert Swanson & Son. Albert Swanson & Son from time to time inquired of defendant the value of goods stored at the various locations covered by the insurance policies; that such inquiries were sometimes made each month or sometimes each second or third month; that upon receipt of such information, it made and filed Value Reports with H. Dalmar & Company of Chicago, Illinois, agent of The Commonwealth Insurance Company of New York, and The Continental Insurance Company, and directly with the Milwaukee Insurance Company of Milwaukee, Wisconsin, and United States Fire Insurance Company, of which latter two companies Albert Swanson & Son was the local general agent. All Value Reports were prepared, filed and signed by Albert Swanson & Son, by Elmer Swanson.

12. From records in existence, Value Reports were filed on behalf of O. Henry Tent & Awning Company as follows: (Value Reports are broken down not by year but by policy term. The expiration of the term is indicated by a double space).

| Report for Month of – | Date Due | Date Filed | Months Past Due |
|---|---|---|---|
| | 1948 | | |
| January | 2/28 | 6/23/48 | 4 |
| February | 3/31 | 6/23/48 | 3 |
| March | 4/30 | 6/23/48 | 2 |
| | | | |
| April | 5/31 | 10/15/48 | 5 |
| May | 6/30 | 10/15/48 | 4 |
| June | 7/30 | 10/15/48 | 3 |
| July | 8/31 | 12/20/48 | 4 |
| August | 9/30 | 12/20/48 | 3 |
| September | 10/31 | 12/20/48 | 2 |
| October | 11/30 | 12/20/48 | 1 |
| January | | | |
| February | | | |
| March | | | |
| | | | |
| April | 5/31 | 10/17/49 | 5 |
| May | 6/30 | 10/17/49 | 4 |
| June | 7/31 | 10/17/49 | 3 |
| July | 8/31 | 10/17/49 | 2 |
| August | 9/30 | 10/17/49 | 1 |
| September | 10/21 | 1/ 3/50 | 2 |
| October | 11/30 | 1/ 3/50 | 1 |
| November | 12/31 | 1/ 3/50 | 1 |
| December | 1/30/50 | 4/ 6/50 | 3 |
| January | 2/28 | 4/ 6/50 | 2 |
| February | 3/31 | 4/ 6/50 | 1 |
| March | 4/30 | 5/17/50 | 1 |

| Report for Month of – | Date Due | Date Filed | Months Past Due |
|---|---|---|---|
| April | 5/31 | 8/23/50 | 3 |
| May | 6/30 | 8/23/50 | 2 |
| June | 7/30 | 8/23/50 | 1 |
| July | 8/31 | 10/ 4/50 | 2 |
| August | 9/30 | 10/ 4/50 | 1 |
| September | 10/30 | 11/20/50 | 1 |
| October | 11/31 | 12/ 8/50 | 1 |
| November | 12/31 | 1/15/51 | 1 |
| December | 1/31/51 | 3/14/51 | 2 |
| January | 2/28 | 4/19/51 | 2 |
| February | 3/31 | 4/19/51 | 1 |
| March | 4/30 | 4/19/51 | none |
| April | 5/31 | 8/13/51 | 3 |
| May | 6/30 | 8/13/51 | 2 |
| June | 7/30 | 8/13/51 | none |
| July | 8/31 | 10/15/51 | 2 |
| August | 9/30 | 10/15/51 | none |
| September | 10/30 | 11/ 6/51 | 1 |
| October | 11/31 | 12/18/51 | 1 |
| November | 12/31 | 3/21/52 | 3 |
| December | 1/31/52 | 3/21/52 | 2 |
| January | 2/28 | 4/ 9/52 | 2 |
| February | 3/31 | 4/ 9/52 | 1 |
| March | 4/30 | 6/ 3/52 | 2 |
| April | 5/ 3 | 8/12/52 | 3 |
| May | 6/30 | 8/12/52 | 2 |
| June | 7/31 | 9/22/52 | 2 |
| July | 8/31 | 9/22/52 | 1 |
| August | 9/30 | 10/31/52 | 1 |
| September | 10/31 | 11/18/52 | 1 |
| October | 11/31 | 12/ 8/52 | 1 |
| November | 12/31 | 1/22/53 | 1 |
| December | 1/31/53 | 2/23/53 | 1 |
| January | 2/28 | 4/24/53 | 2 |
| February | 3/31 | 4/24/53 | 2 |
| March | 4/30 | 4/24/53 | none |
| April | 5/31 | 7/ 9/53 | 2 |
| May | 6/30 | 7/ 9/53 | 1 |
| June | 7/31 | 9/ 8/53 | 2 |
| July | 8/31 | 9/ 8/53 | 1 |
| August | 9/30 | 10/28/53 | 1 |
| September | 10/31 | 10/28/53 | none |
| October | 11/30 | 12/28/53 | 1 |
| November | 12/31 | 12/30/53 | none |
| December | 1/30/54 | 3/ 3/54 | 2 |
| January | 2/28 | 4/28/54 | 2 |
| February | 3/31 | 4/28/54 | 1 |
| March | 4/30 | 4/28/54 | none |

| Report for Month of – | Date Due | Date Filed | Months Past Due |
|---|---|---|---|
| April | 5/31 | 7/28/54 | 2 |
| May | 6/30 | 7/28/54 | 1 |
| June | 7/31 | 7/28/54 | none |
| July | 8/31 | 8/28/54 | none |
| August | 9/30 | 10/ 1/54 | none |
| September | 10/31 | 11/17/54 | 1 |
| October | 11/30 | 12/17/54 | 1 |
| November | 12/31 | 12/29/54 | none |
| December | 1/31/55 | 1/31/55 | none |
| January | 2/28 | 5/ 5/55 | 3 |
| February | 3/31 | 5/ 5/55 | 2 |
| March | 4/30 | 5/ 5/55 | 1 |
| | | | |
| April | 5/31 | 7/15/55 | 2 |
| May | 6/30 | 7/15/55 | 1 |
| June | 7/31 | 8/26/55 | 1 |
| July | 8/31 | 9/14/55 | 1 |
| August | 9/30 | 9/26/55 | none |
| September | 10/31 | 10/18/55 | none |
| October | 11/30 | 11/28/55 | none |
| November | 12/31 | 12/27/55 | none |
| December | 1/30/56 | 3/21/56 | 2 |
| January–1956 | 2/28 | 4/27/56 | 2 |
| February | 3/31 | 4/27/56 | 1 |
| March | 4/30 | 4/27/56 | none |

Where it appears that a report has been filed one month late, the period takes in a month or less than a month.

13. The Value Reports required to be filed pursuant to the terms of the policies of insurance described in Paragraph **7** above were filed on behalf of O. Henry Tent & Awning Company as follows:

| Report for Month of – | Date Due | Date Filed | Months Past Due |
|---|---|---|---|
| April – 1955 | 5/31 | 7/15/55 | 2 |
| May | 6/30 | 7/15/55 | 1 |
| June | 7/31 | 8/26/55 | 1 |
| July | 8/31 | 9/14/55 | 1 |
| August | 9/30 | 9/26/55 | none |
| September | 10/31 | 10/18/55 | none |
| October | 11/30 | 11/28/55 | none |
| November | 12/31 | 12/27/55 | none |
| December | 1/30/56 | 3/21/56 | 2 |
| January – 1956 | 2/28 | 4/27/56 | 2 |
| February | 3/31 | 4/27/56 | 1 |
| March | 4/30 | 4/27/56 | none |

Where it appears that a report has been filed one month late, the period takes in a month or less than a month.

14. Prior to the issuance of each policy of insurance by the insurance companies, the insured was required to pay or deposit in advance a provisional premium. Each policy provided *inter alia:*

"*Premium Adjustment Clause*— The premium named in this policy is provisional only. The actual premium consideration for the liability assumed hereunder shall be determined, at the expiration of this policy, by application of the following formula:

" 'A' After deducting the amount of specific insurance, if any (not exceeding, however, the amount of value reported), at each location an average of the total remaining values reported at each location shall be made, and if the premium on such average values at the rate applying at each location herein provided or in case of location acquired (see Limit of Liability Clause), the rate used shall be the rate that is applicable to each such location at the time the location was first reported, exceeds the provisional premium, the Insured shall pay to the Insurer the additional premium for such excess; and, if such premium is less than the provisional premium, the Insurer shall refund to the Insured any excess paid."

Premiums on all of the policies of insurance issued to defendant were computed pursuant to the provisions of the aforesaid clause.

15. The procedure described in the *Premium Adjustment Clause* of the policies in suit has been followed by the insurance companies which had issued policies to the defendant from 1940 through 1956; that on June 29, 1956, each of the plaintiffs accepted from the defendant and approved the defendant's statement in final adjustment for the period of March 31, 1955 to March 31, 1956; that after plaintiff companies made their charge for insurance premiums for such period, which included the reporting value of $32,188, there was due the defendant from the plaintiffs insurance premium credits; that the plaintiff insurance companies retained the balance of the premium due the defendant as overpayment on the provisional premium and having applied such overplus to the provisional premium charged on new policies issued to the defendant.

16. On March 28, 1956, a fire occurred within the building (one of the insured locations) at 3222–24 North Halsted Street, Chicago, Illinois, and the insured property consisting of stock, materials and supplies owned by the defendant and located therein, of the value of $32,188.29, was thereby damaged and destroyed.

17. After the occurrence of said fire on March 28, 1956, the defendant insured gave to each of the plaintiff insurance companies reasonably prompt notice of the fire. The plaintiff insurance companies employed as their agents fire adjusters who went to the scene of the fire and checked the goods and merchandise of defendant and examined the books and records of defendant. The fire adjusters found that defendant's actual fire loss was $32,188.29.

18. The last value report filed with plaintiff insurance companies prior to the fire was the value report for December of 1955, filed on March 21, 1956 and which reported an inventory value in the insured premises of $14,360.76.

19. Thereafter on April 27, 1956, defendant filed and the plaintiffs without protest accepted reports of value for the months of January, 1956, February, 1956, and March, 1956. Such reports showed values of inventories for such months at 3222 North Halsted Street as follows:

| January, 1956 | $16,726.76 |
| February, 1956 | $24,200.44 |
| March, 1956 | $32,188.29. |

20. That the values of stock, materials and supplies owned by defendant and

reported to plaintiffs for all locations for the months of January, February and December of 1953, 1954 and 1955 and for January and February of 1956 are as follows:

|  | 4862 North Clark St. | 4852 North Clark St. | 3224 North Halsted St. | Totals |
|---|---|---|---|---|
| Limits of Liability | $120,000.00 | $20,000.00 | $50,000.00 | $190,000.00 |
| **1953** | | | | |
| January | $ 86,615.51 | $ 8,366.00 | $41,642.54 | $136,624.15 |
| February | 90,479.27 | 8,366.00 | 41,642.54 | 140,487.81 |
| December | 82,518.91 | 5,366.00 | 36,599.15 | 124,484.06 |
| **1954** | | | | |
| January | 88,038.63 | 5,366.00 | 36,000.00 | 129,404.63 |
| February | 86,841.72 | 5,366.00 | 35,900.00 | 128,107.72 |
| December | 71,034.21 | 5,366.00 | 32,626.00 | 109,026.21 |
| **1955** | | | | |
| January | 62,977.22 | 5,366.00 | 32,626.00 | 100,969.22 |
| February | 68,260.30 | 5,366.00 | 32,626.00 | 106,252.30 |
| December | 50,242.53 | 5,366.00 | 14,360.76 | 69,969.29 |
| **1956** | | | | |
| January | 69,701.35 | | 16,726.76 | 86,428.11 |
| February | 61,434.50 | | 24,200.44 | 85,634.94 |

21. Subsequent to the fire, the Underwriters Salvage Company of Chicago took possession of fire salvage at the Halsted Street location. Said salvage was allegedly taken pursuant to an Agreement and Direction under date of March 28, 1956, signed by B. A. Mendelson, President of the O. Henry Tent & Awning Company. A copy of said direction to take custody of and salvage damaged merchandise is attached hereto. Said agreement provides, *inter alia:*

"The undersigned, therefore, hereby authorizes and directs you to take immediate custody of said merchandise and to salvage and sell the same in whatever manner you believe to be to the best advantage; provided, however, that if you shall determine that the cost of removal of debris will exceed the estimated sale value of the salvage, your responsibility for the said custody shall upon notice be terminated.

"From the proceeds of the sale of said merchandise you are authorized to reimburse yourself for all expenses incurred by you with respect thereto and to retain a commission of 12½% of the gross sales price.

"The balance of the proceeds of such sale shall be held by you as Trustee until the ownership of said merchandise and the various interests therein shall have been determined, after which time said balance shall be paid to whomever may be entitled thereto."

Pursuant to such agreement recited the Underwriters Salvage Company took possession of the fire salvage and sold said salvage, receiving therefor a gross sales price of $3,844.38 and a net return of $1,978.28. Said sum is presently held in escrow by the Underwriters Salvage Company.

That the defendant at no time was notified by the Underwriters Salvage Company as to the disposition of the salvage, the sale price received therefrom, nor was there ever tendered to the defendant by the Underwriters Salvage Company any sum or sums of money as its distributive share of the salvage sale proceeds, although the Underwriters Salvage Company at all times kept the plaintiffs posted on the sale of such salvage, the salvage proceeds received on account of the sale thereof, and the salvage company presently holds the proceeds of the salvage sale to be paid out, as it appears from exhibits in this cause, on the direction of Clausen, Hirsh & Miller, attorneys for all of the plaintiffs herein.

22. The plaintiffs, at all times and over the years during which they issued a policy or policies of fire insurance to the defendant, accepted without objection or protest all of defendant's tardily filed monthly reportings; that Elmer Swanson, d/b/a Albert Swanson and Son, as an insurance broker, having purchased policies of insurance in The Commonwealth Insurance Company of New York and The Continental Insurance Company, through H. Dalmar & Company, general agent for such companies, and as the local general agent for United States Fire Insurance Company and Milwaukee Insurance Company of Milwaukee, Wisconsin, plaintiffs herein, did from time to time confer with officials or agents of the plaintiff companies and obtained an assurance from them that tardy filing of reports would not adversely affect defendant's insurance coverage in the event of an intervening loss, and that the defendant would be protected at all times in relation thereto; that at no time that plaintiffs, or any of them, were on the risk, did they, or any of them, cancel or threaten to cancel policies of insurance issued by them, or any of them, if reporting forms were not filed promptly in accord with the policy provision; that at no time did the plaintiffs, or any of them, warn the defendant of the adverse consequences of late filing of reports;

that from exhibits presently in the record in the nature of correspondence between some of the plaintiffs and Albert Swanson and Son, the reports were required solely for the purpose of bringing the companies' records up to date.

23. That it is a common practice of insured firms under the type of contract sued upon herein to file reports tardily and after they are due; that plaintiffs, in the insurance period of March 31, 1955 through March 31, 1956, accepted tardily filed reports without complaint and charged premiums on the reportings therein; that plaintiffs were not prejudiced by defendant's failure to file its reports on time; that plaintiffs waived the strict reporting requirements contained in the policies of insurance sued upon herein and are now estopped by their conduct to insist on strict compliance with the Monthly Value Reporting Clause contained in such policies; that plaintiffs' course of conduct over the long period of years during which they, or some of them, respectively, carried defendant as a risk, evidences the fact that the plaintiffs did not consider prompt filing of monthly reports indispensable to keep defendant fully insured at all times, and particularly on March 28, 1956, the loss date.

24. That the acceptance of premiums over the period when reports were tardily filed, the continual acceptance of tardily filed reports without comments, the acceptance of tardily filed reports for January and February of 1956, the acceptance of insurance premiums for the policy year ending March 31, 1956, which included premiums on values reported subsequent to the loss date, for the months of January, February and March, 1956; the taking possession of the $32,-188.29 salvage loss and the retention of funds by the Underwriters Salvage Company arising from the sale of the salvage, to be disbursed only upon order of plaintiffs' attorneys, estops the plaintiffs from claiming that defendant lacked full insurance protection under the policies of insurance issued by the plaintiffs

for the policy period ending March 31, 1956.

25. That Section 2, Chapter 74—Smith-Hurd Illinois Annotated Statutes —Interest, among other things, provides as follows:

"Rate on money after due Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; * * * and on money withheld by an unreasonable and vexatious delay of payment."

That the policies herein sued upon are written instruments within the meaning of such section of the statute; that defendant is entitled to recover from the plaintiffs interest on the amount of its loss from May 28, 1956, sixty days after the fire loss, to the date hereof; that the plaintiffs have unreasonably and vexatiously delayed payment of defendant's loss. That at no time have the plaintiffs tendered to defendant any sum or sums of money whatsoever.

26. That the plaintiffs have vexatiously and without reasonable cause refused on demand prior to the commencement of this action to pay the amount of defendant's loss, and defendant is therefore entitled to recover from plaintiffs reasonable attorney's fees to be taxed as costs in this action in addition to all other costs, in accord with the statutes of the State of Illinois in such case made and provided.

27. That Rule 67 of the Federal Rules of Civil Procedure, 28 U.S.C.A., is as follows:

"Rule 67. Deposit in Court

"In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing. Money paid into court under this rule shall be deposited and withdrawn in accordance with the provisions of Title 28, U.S.C., §§ 2041, and 2042; the Act of June 26, 1934, c. 756, § 23, as amended (48 Stat. 1236, 58 Stat. 845), U.S.C., Title 31, 725v; or any like statute. As amended Dec. 29, 1948, effective Oct. 20, 1949."

That the plaintiffs have not deposited any sum of money with the Registry of this Court.

28. Defendant has proven the allegations made in its Counter-Claim filed herein.

### Conclusions of Law

1. The Court has jurisdiction of the parties to this suit and of the subject matter thereof.

2. On March 31, 1955, each of the plaintiffs issued to the defendant, Illinois standard policy of fire insurance with Form No. 111 Ed. (June, 1953), "Multiple Location Reporting Form A, Monthly Average, With Premium Adjustment" attached thereto for a period of one (1) year covering stock, materials and supplies owned by the defendant while located at 3222–24 North Halsted Street, Chicago, Illinois, with a total limit of liability in the sum of $50,000 as follows:

| Policy No. | Company | % of Limit of Liability |
|---|---|---|
| 720562 | Commonwealth Insurance Company | 15% |
| 42328 | Continental Insurance Company | 15% |
| 98633 | Milwaukee Insurance Company | 35% |
| 793365 | United States Fire Insurance Company | 35% |

734

3. That Albert Swanson & Son, local general agent of United States Fire Insurance Company and Milwaukee Fire Insurance Company of Milwaukee, Wisconsin, had authority to and did by its acts waive strict compliance with the Value Reporting Clause in the policies of insurance written by it for such companies wherein the defendant was the assured.

4. That by their conduct during the 1955–1956 policy year in accepting late reports and in expressly giving defendant permission to file them; in accepting the full premium for such period on reported values, after the fire; in not ever considering the defendant to be in default by reason of tardy filings; their course of conduct over the period of years they respectively carried defendant as a risk as the Court has herein found as a fact; retention of control of the proceeds of the salvage sale, evidenced by a letter from the Cook County Loss Adjustment Bureau, plaintiffs' agent, to the Underwriters Salvage Company in which it states that:

"Because this loss is presently being litigated and because the companies have not as yet paid any claim, we do not believe it is proper at this time to forward the salvage recovery items to the individual companies. We prefer, therefore, that you hold the recovery monies for the attention of whom it may concern, subject to further direction as to payment from the office of Clausen, Hirsh, Miller & Gorman";

although the alleged agreement under which the salvage was taken provides only that the Underwriters Salvage Company will hold the proceeds of sale

"until the ownership of said merchandise and the various interests therein shall have been determined, after which time said balance shall be paid to whomever may be entitled thereto";

that no action having ever been brought to determine the ownership of the salvage, the plaintiffs have waived strict compliance with the reporting clause and are estopped from claiming that defendant lacked full protection under the policies sued on herein, and defendant was on March 28, 1956, fully insured to the policies' limit of $50,000.

5. That plaintiffs were bound to and should have given the defendant reasonable notice before considering tardy filing of value reports as a forfeiture of its right to full coverage.

6. That the action brought by plaintiffs was so brought for the purpose of having this Court declare only the limit of plaintiffs' liability to defendant; that no tender of money was ever made by plaintiffs to defendant.

7. Defendant is entitled to recover from the plaintiffs the sum of $32,-188.29, plus interest on $32,188.29 from May 28, 1956 to the present date on account of plaintiffs' unreasonable and vexatious delay in making payment to defendant of its fire loss; that the policies of insurance are written instruments within the meaning of Section 2, Chapter 74, of the Smith-Hurd Illinois Annotated Statutes.

8. That defendant is entitled to have and recover of the plaintiffs, attorneys' fees, for the reason that plaintiffs' refusal to pay the fire loss caused the defendant to employ counsel to prosecute its action against the plaintiffs; that plaintiffs' refusal to pay defendant's fire loss was vexatious within the meaning of Section 767, Chapter 73, of the Smith-Hurd Illinois Annotated Statutes.

9. Plaintiffs should pay the costs of suit, which shall include reasonable attorneys' fees. Defendant is entitled to a judgment against the plaintiffs in the aggregate of $32,188.29, with interest at the rate of 5 per cent per annum from May 28, 1956.